DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant James B. Martin appeals from his conviction and sentence by the Pickaway County Common Pleas Court finding him guilty of possession of cocaine, in violation of Revised Code 2925.11(A)(C)(4), a felony of the fourth degree. Appellant claims the trial court erred by denying his motion to suppress because Sergeant Thomas lacked probable cause or reasonable suspicion to arrest Appellant for the offense of driving under the influence. The State contends Sergeant Thomas' observations provided probable cause to arrest Appellant for driving under the influence. We agree and conclude that Sergeant Thomas had probable cause to arrest appellant for driving under the influence. Since the arrest did not violate probable cause requirements under the Fourth
and Fourteenth Amendments to the United States Constitution, evidence secured incident to arrest is admissible. Accordingly, the trial court acted properly when it denied Appellant's motion to suppress.
 {¶ 2} In November of 2003, Appellant was charged with one count of possession of cocaine, in violation of Revised Code 2925.11(A)(C)(4), a felony of the fourth degree. Appellant subsequently filed a motion to suppress and argued to suppress all evidence related to "and stemming from the warrantless seizure initiated by Sergeant Thomas of the Ohio State Highway Patrol" because he lacked probable cause or reasonable suspicion to arrest Appellant for driving under the influence.
 {¶ 3} At the suppression hearing, Sergeant Thomas testified that on August 17, 2003, between the hours of 1:30 a.m. and 2:30 a.m. he observed a pickup truck traveling southbound in the northbound lane of U.S. 62 with no headlights on. At that time, Sergeant Thomas turned his vehicle around and proceeded to follow the truck to a private drive, never losing visual contact of the truck. With no other vehicles on the road, Sergeant Thomas located the truck in the private drive still running and abandoned. Initially, Sergeant Thomas confronted the resident of the home however, after further investigation it became apparent the resident was not the driver of the abandoned truck.
 {¶ 4} Sergeant Thomas testified that the resident told him he had heard a "thud" behind the house. Further, Sergeant Thomas testified that at that time, he went back around the house and located the suspect [Appellant] laying against the side of the house. Sergeant Thomas did not know Appellant's name at this time and found him to be incoherent. Sergeant Thomas asked Appellant to put his hands up and asked who he was but Appellant never answered him. Sergeant Thomas then asked Appellant to get up and put his hands where he could see them. After the fourth time he asked him to put his hands up he came to and advised him that he would not put his hands up and then began to stand up. Sergeant Thomas told Appellant to get back on the ground and Appellant disobeyed. At that time, Appellant kept coming towards Sergeant Thomas and was ordered to stop. Appellant continued to head toward Sergeant Thomas and subsequently Sergeant Thomas had to use his taser. Due to non compliance with orders, Sergeant Thomas had to use his taser four times on Appellant. During this time, Sergeant Thomas testified Appellant had slurred speech and was yelling and saying profanities. After the fourth taser, Sergeant Thomas advised Appellant that he was under arrest and took him to the Circleville City Jail. Upon arriving at the jail Appellant was searched and a substance later identified as cocaine was found on Appellant. As a result of the altercation, Appellant was charged with driving under the influence, possession of cocaine and other driving and non-driving related charges. All but the possession of cocaine charges were dropped.
 {¶ 5} Appellant filed a motion to suppress all evidence related to "and stemming from the warrantless seizure initiated by Sergeant Thomas of the Ohio State Highway Patrol" because Sergeant Thomas lacked probable cause or reasonable suspicion to arrest Appellant for driving under the influence. The trial court subsequently denied Appellant's motion to suppress. The court found that Sergeant Thomas had probable cause to pursue the truck that was driving without its headlights southbound in the northbound lane of U.S. 62. The court stated: "[c]learly, Sergeant Thomas had a duty to investigate the erratic driving behavior of this particular vehicle" and that Sergeant Thomas did not make an investigative stop of the truck, but rather the truck was voluntarily stopped in a private driveway and was thereafter abandoned by the driver. Further, the court held that "Sergeant Thomas' hot pursuit of the pickup did not end simply because defendant elected to abandon it in a private driveway."
 {¶ 6} In July of 2004, Appellant pled no contest to possession of cocaine. The trial court found him guilty and sentenced him to sixteen months in prison, a $1,000.00 fine and suspended his driving privileges for one year.
 {¶ 7} Appellant filed this timely notice of appeal, raising one assignment of error:
 {¶ 8} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE OBTAINED FROM THE WARRANTLESS SEIZURE OF THE APPELLANT BY THE ARRESTING OFFICER WITHOUT ANY EXCEPTION TO THE WARRANT REQUIREMENT IN VIOLATION OF ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION AND THE FOURTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTIUTION."
 {¶ 9} In his sole assignment of error, Appellant argues that the trial court erred by denying his motion to suppress. Appellant contends the court improperly concluded that probable cause existed to arrest Appellant for driving under the influence. Specifically, Appellant argues that Sergeant Thomas failed to: (1) actually observe who was driving the truck; (2) observe impaired driving; (3) obtain information on ownership of the truck by running the license; and (4) ascertain the ownership of the residence. Appellant also argues that: (1) it takes more evidence than just finding a sleeping man on the property to arrest for operating under the influence; (2) physical manifestations of alcohol consumption are insufficient to provide probable cause to arrest for driving under the influence; and (3) that "[Sergeant Thomas] merely assumed the Appellant's guilt and arrested him accordingly."
 {¶ 10} The State contends the traffic violations observed by Sergeant Thomas provided justification for further investigation and that after investigating Appellant's actions, Sergeant Thomas had probable cause to arrest Appellant for driving under the influence. The State also contends that the discovery of the cocaine during the stationhouse search was admissible.
 {¶ 11} Appellate review of a trial court's decision regarding a motion to suppress involves mixed questions of law and fact. See State v.Featherstone, 150 Ohio App.3d 24, 778 N.E.2d 1124, 2002-Ohio-6028, at ¶ 10; citing State v. Vest (May 29, 2001), Ross App. No. 00CA2576; Statev. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See State v. Dunlap (1995), 73 Ohio St.3d 308, 314,652 N.E.2d 988; State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See Dunlap, supra; Long, supra; State v. Medcalf
(1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. See Featherstone, supra; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v.Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v.United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 12} The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 13} When an arrest without a warrant violates the probable cause requirement under the Fourth and Fourteenth Amendments to the United States Constitution, evidence secured as an incident to such arrest should have been excluded from the trial. See Mapp v. Ohio (1961),367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Under the exclusionary rule of Mapp, supra, for a violation of law to require suppression of improperly seized evidence, the violation must rise to a deprivation of constitutional proportion. State v. Wilmouth (1986), 22 Ohio St.3d 251,490 N.E.2d 1236; State v. Kettering (1980), 64 Ohio St.2d 232,416 N.E.2d 598.
 {¶ 14} At the suppression hearing, Sergeant Thomas testified that he observed the truck traveling southbound in the northbound lane of U.S. 62, with no headlights on. Immediately, he turned his car around and followed the truck to a private driveway. During this time, Sergeant Thomas never lost visual contact of the truck. Sergeant Thomas further testified that the truck was parked, running and abandoned when he approached it in the driveway. Based on further investigation, Sergeant Thomas found Appellant behind the house.
 {¶ 15} These facts, when taken together with rational inferences, would have warranted Sergeant Thomas to make a non investigatory stop based on probable cause formed when he observed the traffic violation. See Whren v. United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89 (where the court held that an officers observation of a traffic violation is sufficient to satisfy the probable cause standard); see, also State v. Beacham, Washington App. No. 03CA36, 2003-Ohio-6211. However, Appellant abandoned his truck before Sergeant Thomas had a chance to stop him. Because Sergeant Thomas had probable cause to stop Appellant he further had probable cause to pursue Appellant after he abandoned his vehicle
 {¶ 16} An arrest is valid when the arresting officer has probable cause to believe the arrestee has committed a crime. See State v. Timson
(1974), 38 Ohio St.2d 122, 311 N.E.2d 16, paragraph one of the syllabus. Probable cause to justify an arrest has been described as "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89,3 Ohio Misc. 71, 85 S.Ct. 223, 13 L.Ed.2d 142; citing Brinegar v.United States, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879; Henry v.United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." Brinegar, 338 U.S. at 176. Thus, Sergeant Thomas had probable cause to arrest Appellant if the totality of the facts and circumstances known to him at the time of the arrest would warrant a prudent person to believe Appellant committed or was committing a crime.
 {¶ 17} The legal standard for determining whether probable cause is sufficient to arrest an individual for driving under the influence is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Cline, Monroe App. No. 04MO4, 2004-Ohio-6216 at ¶ 13; citing State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-0212; Beck, supra. In general, an officer may not make a warrantless arrest for a misdemeanor unless the crime occurs in the officer's presence. Cline, supra at ¶ 14; citingState v. Henderson (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104. However, there is a recognized exception to this rule, "where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs." Cline, supra at ¶ 14; citing Henderson; see, also Oregon v. Szakovits (1972),32 Ohio St.2d 271, 291 N.E.2d 742.
 {¶ 18} At the suppression hearing Sergeant Thomas testified as follows:
 {¶ 19} "A. * * * I went back around the house and I located the suspect, had him up against the side of the house.
Q. Okay. And that was Mr. Martin?
A. At the time I didn't know who it was. If it was Mr. Martin or who at the time.
Q. Okay. What kind of condition was he in when you found him?
A. He was incoherent. I asked him to put his hands up, and I asked who he was, and he never answered my direction or anything.
Q. Okay. Again, where was he physically when you came around to the back of the house?
A. Laying up against the side of the house with his hands in front of him.
Q. Okay. So at this point you confront him and try to find out who he is?
A. Yes.
Q. And he is not understanding you?
A. No. He is not understanding me.
Q. So then what do you do next?
A. I advised him to get up, put his hands where I can see for the officer's safety, I didn't know whether he was going to or not, but he still did not comply to my commands.
Q. Okay. What specifically did he do?
A. After the fourth time that I asked him to put his hands up, he came to and advised me No, he wasn't, and started to get up.
Q. Came to, what do you mean?
A. Complied to my command at that time.
Q. So he actually got up?
A. Yes.
Q. So what happened next?
A. I advised him to get back on the ground, put his hands behind his back and stay there.
Q. Okay. And did he do that?
A. No
Q. So what happened next?
A. He kept coming toward me, and I advised him to stop. He kept coming toward me.
Q. What do you mean coming toward you?
A. Coming towards me. I told him to stop and stay where he was.
Q. He had gotten up from sitting down but had not put his hands behind his back, is that what he wasn't doing at this point?
A. Yes.
Q. And you are trying to find out who he is and he is not answering your questions; is that right?
A. That is right.
Q. Okay. All right. So what happens next?
A. At that time he still comes towards me, I pushed him away from me and used the taser, hitting his upper back."
 {¶ 20} Appellant cites State v. Cloud (1991), 61 Ohio Misc.2d 87,573 N.E.2d 1244, for the proposition that "[i]t takes more than finding a sleeping man on the residence property to arrest for operating under the influence. . . ." In Cloud, supra, the court held that the officer lacked probable cause for arresting the defendant after he was stopped, based only upon suspect's appearance and order of alcohol emanating from him.Cloud, supra. However, in Cloud, supra, the arresting officer did not witness any impaired motor coordination in the form of failed sobriety tests or erratic driving prior to arresting the defendant. Id. The facts and circumstances in the case at hand are distinguishable from Cloud,
supra. In the case sub judice, the evidence introduced supports the finding that Sergeant Thomas had reasonable grounds to believe Appellant was operating the truck under the influence. These grounds include Sergeant Thomas' observations of the truck traveling southbound in the northbound lane of U.S. 62 with no headlights on, observations of Appellants condition and comments and finding Appellant asleep while trespassing on another's property. These facts, taken in conjunction with the set of circumstances as a whole, gives rise to probable cause to believe Appellant had operated the truck under the influence of alcohol. Therefore, Appellants arguments that Sergeant Thomas did not actually observe who was driving the truck, failed to observe impaired driving, failed to obtain information on ownership of the truck and failed to ascertain ownership of the residence are without merit.
 {¶ 21} We conclude that the record reflects Sergeant Thomas had probable cause to arrest Appellant for driving under the influence. Moreover, Appellant's actions permitted Sergeant Thomas to arrest Appellant for multiple offenses. The quantum of facts and circumstances within Sergeant Thomas' knowledge would warrant a reasonable person to conclude that Appellant had been driving under the influence. The balance between effective law enforcement and Appellant's individual liberties was met.
 {¶ 22} Since the arrest did not violate probable cause requirements under the Fourth and Fourteenth Amendments to the United States Constitution, evidence secured incident to arrest is admissible. Mapp,
supra. Thus, "[a] reasonably conducted routine stationhouse search, without a warrant, of a person who is being booked immediately prior to his entering a cell, for the purpose of inventorying and safekeeping his personal effects, is not unreasonable. Such procedure protects the prisoner and his valuables from destruction or loss during his incarceration. It also protects the state and its officers and agents by preventing weapons and contraband from entering the jail. This reasonable police procedure is not violative of any constitutional rights." State v.Dempsey (1970), 22 Ohio St.2d 219, 259 N.E.2d 745. Therefore, Appellant's search at the stationhouse that uncovered cocaine renders the evidence found admissible.
 {¶ 23} For the foregoing reasons, we conclude that Sergeant Thomas had probable cause to arrest Appellant for a violation of driving under the influence. Since the arrest did not violate probable cause requirements, evidence secured incident to arrest is admissible. Accordingly, we overrule Appellant's assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.