[Cite as *State v. Savage*, 2019-Ohio-4859.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180413 |
| | | TRIAL NO. B-1700608 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| EDDIE SAVAGE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 27, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bradley R. Hoyt*, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}  Eddie Savage appeals his convictions, after a jury trial, for aggravated robbery, a felony of the first degree, with gun specifications, and robbery, a felony of the second degree.  Savage contends that the trial court erred in imposing a sentence that was not supported by the record, the trial court erred by joining unrelated cases for trial, he was deprived of his right to a fair trial due to prosecutorial misconduct, and the trial court erred by not suppressing the evidence obtained in the photographic lineups.  Finding his assignments of error without merit, we affirm the trial court's judgment.

*Relevant Facts and Background*

{¶2}  Eddie Savage was indicted for robbing three different cell phone stores over a three-week time frame.  At the time, multiple law enforcement agencies were investigating numerous robberies, including a motel robbery in Northern Kentucky.  Detective Michael Kaeser of the Cincinnati Police Department ("CPD") was investigating the robbery at Metro PCS on Reading, Detective David Hall of CPD was investigating the robbery at Metro PCS on Glenmore, Detective Lampe from the Green Township Police Department was investigating the robbery at the Boost Mobile store on Glenway.

*Metro PCS, Reading Road*

{¶3}  Count one alleged that on December 17, 2016, Savage committed a theft offense by obtaining money belonging to Metro PCS and controlling, displaying, brandishing, or indicating possession of a firearm.  Count two alleged that Savage inflicted or attempted to inflict physical harm on Shavonna Coleman, the store clerk, while committing the theft.

{¶4}  While Coleman was working, a man approached her, showed her a

gun, and demanded money. After viewing a photograph lineup, Coleman identified Savage as the perpetrator. However, at trial, she testified that she was uncertain if Savage was the one who robbed the store. He was acquitted of these charges.

### Metro PCS, Glenmore Avenue

**{¶5}** Nine days after the robbery on Reading Road, the Glenmore Metro PCS store was robbed. Counts three and four alleged that Savage committed this theft and inflicted or attempted to inflict physical harm on the clerk, Walter Davie. According to Davie, a man walked into the store with a gun and demanded money. He too identified Savage as the perpetrator from a photo lineup, but testified at trial that he was uncertain that Savage was the person who robbed the store. Savage was acquitted of these charges.

### Boost Mobile, Glenway Avenue

**{¶6}** Counts five and six alleged that Savage and an accomplice took money from the Boost Mobile Store on Glenway Avenue and inflicted or attempted to inflict physical harm on Keith Woods, the store clerk. Woods identified Savage after he was shown a photographic lineup.

**{¶7}** At trial, Woods testified that he was working at the store when two men entered the store together. As Woods went up to the register, one man asked to see a phone, so he began to show the men some phones. The men started talking about accessories, when one man lifted his shirt, displayed a gun, and demanded all the money in the register. Woods stated that the gun looked real, but all he saw was the handle.

**{¶8}** Both men demanded the money, so Woods took all of the money from the cash register and put it into a plastic bag. Then Woods was asked to empty the

3

display cases and put the accessories, such as cell phone cases, blue tooth speakers, and memory cards into the bag. Woods could not remember which man asked him to do that.

{¶9}   Savage then asked Woods to accompany him to the stock room at the back of the store so he could access all of the phones. When Woods went to the stock room, Savage asked him to unplug the security cameras, and he complied. Woods emptied a trash can and began to fill it up with cell phones. Both Savage and his accomplice told Woods to stay calm, and that they did not want to hurt him. After approximately four minutes, the two ran out of the store, and Woods called the police.

{¶10} Savage was found guilty of all of the charges related to the Boost Mobile robbery. The trial court merged the robbery conviction with the aggravated-robbery conviction and sentenced Savage to 11 years on the aggravated robbery and three years on the gun specification to be served prior to and consecutively with the aggravated-robbery sentence.

*The Sentence*

{¶11} In his first assignment of error, Savage contends that the trial court erred in imposing more than a minimum sentence because the record did not support the sentence.

{¶12}   This court reviews sentences under the standard of review set forth in R.C. 2953.08(G)(2). Under that standard, an appellate court "may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. A trial court need not make specific

4

findings, and we can presume the court considered the statutory factors absent an affirmative demonstration in the record showing otherwise. *See State v. Robinson*, 1st Dist. Hamilton No. C-150602, 2016-Ohio-5114, ¶ 6.

{**¶13**} At the sentencing hearing, the trial court considered Savage's criminal history, the nature and circumstances of the crime, and the impact of the offense on the victim. Savage has failed to affirmatively demonstrate that the record does not support the sentence.

{**¶14**} Accordingly, we overrule the first assignment of error.

*Joinder of the Offenses for Trial*

{**¶15**} In the second assignment of error, Savage argues that the trial court erred when it denied his request for relief from joinder. Crim.R. 8(A) permits the joinder of offenses if the offenses are (1) "of the same or similar character," (2) "based on the same act or transaction," (3) "based on two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (4) "part of a course of criminal conduct."

{**¶16**} If the offenses meet at least one of the four requirements, a trial court shall order separate trials if the defendant is prejudiced by the joinder. Crim.R. 14. When the offenses are of the same and similar character, joinder creates a greater risk of prejudice to the defendant. *See State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992). Joinder may be prejudicial "when the offenses are unrelated and the evidence as to each is very weak." *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). The burden is on the defendant to show that he would be prejudiced by joinder. Crim.R. 14.

{**¶17**} A claim of prejudice can be negated by the state by a showing either "(1) that the evidence for each count will be admissible in a trial of the other counts

under Evid.R. 404(B), or (2) that the evidence for each count is sufficiently separate and distinct so as not to lead the jury into treating it as evidence of another." *State v. Bennie*, 1st Dist. Hamilton No. C-020497, 2004-Ohio-1264, ¶ 20.

{¶18} In this case, although Savage filed a motion to sever under Crim.R. 14, he did not renew his motion at the close of the state's case or at the close of trial. The failure to renew the motion "waived any previous objection, so the issue was not preserved for appeal." *State v. Robertson*, 1st Dist. Hamilton Nos. C-070151 and C-070159, 2008-Ohio-2562, ¶ 11.

{¶19} Even if the matter were not waived, we nonetheless find that Savage has failed to establish that he was prejudiced by the joinder. Any claim of prejudice would be negated by the fact that the evidence presented was separate and distinct, and the jury was not biased by the evidence as demonstrated by the fact that it acquitted Savage of all of the charges related to the robberies of the two Metro PCS stores. Therefore, we overrule Savage's second assignment of error.

*Cumulative Prosecutorial Misconduct*

{¶20} In his third assignment of error, Savage argues that he was denied his right to a fair trial due to cumulative prosecutorial misconduct. Specifically, he alleges that the prosecutor deliberately elicited improper testimony on his Fifth Amendment right to remain silent, made improper statements in opening remarks, made prejudicial references to the codefendant, and misstated the evidence in the closing argument.

{¶21} The test for prosecutorial misconduct is (1) whether the remarks were improper, and (2) if so, whether the remarks affected the accused's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). The conduct of the prosecuting attorney cannot be grounds for error unless it deprives the defendant

6

of a fair trial. *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993).

{¶22} It is well established that the admission of an accused's silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination. *See State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 31.

{¶23} After Savage's arrest, he invoked his right to counsel and refused to answer any questions. At trial, the prosecutor had the following exchange with Detective David Hall:

Q: Did you ever ask Mr. Savage if that was in fact his phone?

A: That was one of the things we discussed with him during the interview, but he declined to comment.

{¶24} Defense counsel objected to the statement, and the trial court sustained the objection and explained to the jurors that Savage had the right not to answer the detective's question and that exercising that right could not be held against him. Then the court instructed the jurors to disregard the question and the answer. During jury instructions, the trial court again reminded the jurors to disregard all statements and answers that were stricken by the court.

{¶25} Here, the state presented testimony that Savage remained silent rather than answer the detective's question. Assuming that the question was improper, Savage does not explain how the testimony was prejudicial and deprived him of a fair trial, and we conclude that Savage was not denied his right to a fair trial.

{¶26} First, the reference was brief and isolated. *See Leach*. Second, the trial court immediately sustained the objection, gave a curative instruction, and further instructed the jurors to disregard the question and the answer. Finally, the

trial court provided a second curative instruction in its general instructions. We must presume that the jury followed the curative instructions given by the trial judge. *See State v. Garner*, 74 Ohio St.3d 49, 59, 665 N.E.2d 74 (1995).

{¶**27**} Next, Savage contends the prosecutor attempted to present improper inferences when Savage's alleged accomplice, Anthony Brooks, refused to testify. When Brooks was called to testify, the prosecutor asked him where he was on the date of the Boost Mobile robbery. In response, Brooks refused to testify, relying on his Fifth Amendment right against self-incrimination. Once he stated that he would not testify, no further questions were asked, and the witness was released.

{¶**28**} Once a witness exercises his Fifth Amendment right not to testify, the prosecutor is not permitted to continue questioning the witness in an attempt to introduce innuendo or inferences to the jury. *See State v. Dinsio*, 176 Ohio St. 460, 466, 200 N.E.2d 467 (1964). *Dinsio* is not violated where, as here, the prosecutor immediately ceased questioning Brooks when he invoked his right. *See State v. Bowers*, 4th Dist. Hocking No. 06CA7, 2007-Ohio-3986, ¶ 9.

{¶**29**} Finally, Savage claims that the prosecutor misstated the evidence in opening and closing by telling the jurors that Boost packaging was found in the truck that Savage rented. However, the state submitted two photographs into evidence that showed Boost packaging in the truck. Thus, the prosecutor's remarks were accurate representations of the evidence.

{¶**30**} We overrule Savage's third assignment of error.

*Admission of the Pretrial Identifications*

{¶**31**} In his fourth assignment of error, Savage argues that the trial court erred in not suppressing the photo lineups because the police procedure was unnecessarily suggestive and unreliable.

8

**{¶32}** Prior to trial, Savage filed a motion to suppress alleging that the lineups were unduly suggestive and unreliable because the witnesses had limited opportunities to view the perpetrator, the witnesses had limited degrees of attention, the level of certainty demonstrated by the witnesses during the identification was insufficient, and the delay between the time of the crime and identifications was lengthy. Savage also objected to the procedures by contending that the lineups failed to comport with the statutory requirements contained in R.C. 2933.83.

**{¶33}** At the motion-to-suppress hearing, Savage limited his challenge to the photo lineups shown to Coleman and Davie as noncompliant with the statutory procedures. Savage did not argue that those lineups were unduly suggestive. With respect to Woods, Savage argued statutory noncompliance and contended that the lineup was unduly suggestive because, prior to the lineup, Woods had seen a video on the news of a suspect who had robbed a Kentucky motel and resembled Savage.

**{¶34}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by some competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's judgment, whether the facts satisfy the applicable legal standard. *Id.*

**{¶35}** "Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 196-197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). First, the defendant must show that the lineup was unduly suggestive. "A lineup is unduly suggestive if it

9

steers the witness to one suspect, independent of the witness's honest recollection." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 208. "When the questionable circumstances of an identification procedure are not due to state action, the reliability of the identification is a question going to the weight of the testimony, not its admissibility." *Id.* at ¶ 209.

{¶36} R.C. 2933.83(B) "requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups." Under R.C. 2933.83(C)(1), evidence of a failure to comply with the required protocol "shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup." Violations of R.C. 2933.83 alone are not independent grounds for suppression. *See State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶ 7. When the evidence shows a failure to comply, that evidence is admissible at trial, and "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(2) and (3). "The remedy for an alleged violation of R.C. 2933.83 is cross-examination about the police procedures at trial - not suppression of the witness's identification." *State v. Stone*, 1st Dist. Hamilton No. C-140028, 2014-Ohio-4444, ¶ 31.

{¶37} Here, Savage's challenges to the lineups based on noncompliance with the statutory procedures did not impact the admissibility of the identifications. *See id.* Therefore, the trial court did not err in admitting the identifications on that basis.

{¶38} Savage did challenge the suggestiveness of the lineup shown to Woods. However, his argument was based upon the fact that Woods viewed a media video

prior to the identification and not the police conduct. "When the questionable circumstances of an identification procedure are not due to state action, the reliability of the identification is a question going to the weight of the testimony, not its admissibility." *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 208. Consequently, the trial court did not err in admitting Woods's pretrial identification, and we overrule Savage's fourth assignment of error.

## *Conclusion*

**{¶39}** Having considered and overruled all of Savage's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS** and **CROUSE, JJ.**, concur.

Please note:

The court has recorded its own entry this date.